Beebe v. Swartwout.

---

---

SILAS BEEBE, appellant, v. CORNELIUS J. SWARTWOUT, appellee.

*Appeal from Adams.*

In a mistake of law, when legal counsel could have been readily procured, the rule that ignorance of the law is always fatal knows of no exception in the Civil Law, the source of the doctrine respecting the effect of mistakes in contracts.

To constitute a breach of the covenant of quiet enjoyment, there must be a union of acts of disturbance and lawful title. The covenantee must exert himself, in some way, to enjoy his possession, or must affirmatively prove that his adversary has a paramount title so that his struggle would be unavailing, before he can sue on the covenant, or obtain redress in a Court of Chancery.

There is a distinction between contracts of an executory character, and those which are fully executed by deeds or conveyances. In the latter case, there can be no rescission of the contract unless it has been tainted by actual fraud.

BILL IN CHANCERY in the Adams Circuit Court, brought by the appellee against the appellant to foreclose a mortgage. The defendant below filed a cross-bill, which, at the hearing before the Hon. Norman H. Purple, at the September term 1845, was dismissed, and a decree of foreclosure was rendered as prayed for in the original bill. The defendant appealed.

An abstract of the pleadings and evidence in the cause will be found in the Opinion of the Court.

*A. Williams & A. Johnston,* for the appellant.

The title to Swartwout is void, because,

1.  The power of attorney is executed before the Patent issued for the land. Gordon's Dig. U. S. Laws, 387, § 1351; 2 Story's U. S. Laws, 1243–44, Law of 6th May, 1812, §§ 2, 4; 3 do. 1563, § 5, Law of 16th April, 1816.

2.  The deed is improperly executed by the attorney in his own name.   4 Barb. & Har. Dig. 146; *Elwell* v. *Shaw,* 16 Mass. 42; *Fowler* v. *Shearer,* 7 Mass. 14; *Ward* v. *Bartholomew,* 6 Pick. 409, 414.

The adverse possession of Grigsby, (Blackwell) and others, coupled with the want of title in Swartwout and his grantee, and the consequent inability of Beebe to obtain possession, are equivalent to an actual eviction, and would sustain an action for breach of covenant.   There was also an action of ejectment against Grigsby, in which Swartwout retained an attorney.   An entry by a person having title, is sufficient, and possession may be lawfully yielded, and will be equal to an eviction.   So, also, an inability to obtain possession is equal to eviction.   2 Sugden on Vendors, 84, 85, 96, 97; 1 Wheaton's Selwyn, 477; *Ludwell* v. *Newman,* 6 T. R. 458; *Hawkes* v. *Orton,* 5 Ad. & Ellis, 356; 5 Went. Pl. 53, 55; *Foster* v. *Pierson,* 4 T. R. 617, 20; 8 Com. Dig. 359, IX, 11, 2; *Duval* v. *Craig,* 4 Cond. R. 32; *Hamilton* v. *Cutts,* 4 Mass. 352; *Sprague* v. *Baker,* 17 Mass. 589; *Park* v. *Bates,* 12 Verm. 385–6; *Loomis* v. *Bedel,* 11 New Hamp. 83–4; *Fitchburg Cotton Co.* v. *Melvin,* 15 Mass. 258; *Smith* v. *Shepard,* 15 Pick. 149; *Gore* v. *Brazier,* 3 Mass. 523; 1 U. S. Dig. 686–7, §§ 293, 301, 306, *"Covenant,"* Art. VIII. *d. e.*

In New York alone has the doctrine of strict technical eviction been insisted on.   In one case, *Waldron* v *McCarty,* 3 Johns. 473, the plaintiff was in possession, and had bought in under a prior mortgage voluntarily.   In another, *Kortz* v. *Carpenter,* 5 do. 120, there is no allegation of adverse possession since the sale, and the Court say it cannot be distinguished from the former.

In *Bumpus* v. *Platner,* 1 Johns. Ch. R. 213, *Chesterman* v. *Gardner,* 5 do. 33, and *Abbott* v. *Allen,* 2 do. 519, the

ground of refusing relief is, that the parties had been long in undisturbed possession, and were not threatened. In the last case, 2 do. 525, the Court expressly declines to lay down any rule, and limits the decision to the special circumstances of the case.

In *Gouverneur* v. *Elmendorf*, 5 Johns. Ch. R. 81, the Court proceeds on the ground that it was plainly a speculating trade; land warrants, an uncertain but flattering investment of capital; $8000 for 19000 acres of land, with $4 to $5 an acre; no covenants except against grantors and heirs; fully advised of all the titles, neglect of suits, &c.

But whatever may be the rights of the parties in a Court of Law, where strict and technical rules may apply to them, in a Court of Equity, which is to afford relief in cases where the law does not suffice for purposes of justice, to do right between man and man, and to prevent irreparable mischief, Courts of Equity will and do interpose. They are not restrained even to cases and precedents already made, but they extend their aid to new cases and circumstances, which are analogous in principle to those already adjudicated. Their jurisdiction shapes and accommodates itself to the various and ever changing pursuits and interests of mankind, and to the unexpected and novel relations which they produce. 1 Story's Eq. Jur. §§ 32, 29; 2 do. §§ 863, 864, 868, 871, 872, 884, 926, 927, 928, 929, 694.

New cases, in which the Court has extended its jurisdiction to prevent irreparable mischief. Ambler's R. 66, 67; *Chedworth* v. *Edwards*, 8 Vesey, Jr., 50; *Lloyd* v. *Gordon*, 2 Swanston, 100; *Osborn* v. *Bank U. S.*, 5 Peters' Cond. R. 741.

Equity will interfere to relieve a purchaser who has bought under a mistake, from paying his money for nothing, even where there is no fraud nor warranty. It seems a question, whether they will not relieve, both for mistakes of law and fact, and when it is necessary for purposes of justice, they construe it either way. *Willan* v. *Willan*, 16 Vesey, 72; *Bingham* v. *Bingham*, 1 Vesey, Sr., 127; *Corking* v. *Pratt*, Ib. 400; *Shish* v. *Foster*, Ib. 88. American cases where

Equity has relieved against mistake. See the doctrine well reviewed in the Opinion of the Vice Chancellor. *Champlin* v. *Laylin*, 6 Paige, 196; and Senator Paige, 18 Wendell, 407.

But if the Court will not interpose to rescind the contract, it will at least not interfere where its aid is asked by the purchaser to collect the money, where he has conveyed no title to the vendee.

In *Johnson* v. *Gere*, 2 Johns. Ch. R. 546, where a suit was brought for collection of the purchase money, the Court stayed the suit because an ejectment was pending for the land. Suppose the ejectment had terminated in the loss of the land by the vendee, would not the Court have made the injunction perpetual? And what necessity is there to do a nugatory act? Why bring a suit against adverse possessors without title to maintain it? Why enter on a possession, vacant, between the outgoing and incoming of tenants, to be expelled by the right of prior possession? *Gaines* v. *Buford*, 1 Dana, 492; 1 Story's Eq. Jur. § 64 *e*, difference of position in equity of plaintiff and defendant.

In *Kerr* v. *Shaw*, 13 Johns. 236, it is said that recovery in ejectment, without actual ouster, does not amount to eviction. It is clear from a reference to the case above of *Johnson* v. *Gere*, that the Courts of Equity, in such a case, would at least enjoin the collection of the purchase money. The Common Law Courts of New York may be technical, but they do not so much control the Equity Courts as to render them powerless.

Failure of title, without eviction, is a good defence to suit for the purchase money. *Frisbie* v. *Hoffnagle*, 11 Johns. 50.

A purchaser of land, in possession, without either actual or virtual eviction, is entitled to the aid of a Court of Equity on showing that his vendor's title is defective, that an adverse title is asserted, and that the vendor is insolvent. *Steel* v. *Pride*, 1 Speer's (S. C.) R. 119; *Hodges* v. *Connor*, ib. 120, 125-6; *Simpson* v. *Hawkins*, 1 Dana, 318.

In the last case, the defect of title is a conveyance from an administrator who was not qualified under the laws of the

State, and who assumed to sell under a will. The defect is analogous to our own.

*O. H. Browning & N. Bushnell,* for the appellee.

I. The covenant for quiet enjoyment relates only to rights existing at the time the covenant is made. *Ellis* v. *Welch,* 6 Mass. 246; 2 Saund. 178 *a,* note A. and 181, note 10; *Grannis* v. *Clark,* 8 Cowen, 36. And it goes to the possession and not to the title. It is a technical rule, that nothing amounts to a breach of the covenant but an actual eviction, or disturbance of the possession of the covenantee. 4 Kent, 471; *Waldron* v. *McCarty,* 3 Johns. 471; *Kortz* v. *Carpenter,* 5 do. 120; *Kerr* v. *Shaw,* 13 do. 236; *Prescott* v. *Trueman,* 4 Mass. 627; 4 Halsted, 28, 141; 8 Johns. 198. And the eviction, disturbance, or ouster, must be by a person having the paramount title. It relates to lawful interruptions, and not to the acts of strangers and wrong doers. *Dudley* v. *Folliott,* 3 T. R. 583; 2 Tho's Coke, 260-1; *Ellis* v. *Welch,* 6 Mass. 246, 250, 252; *Greenby* v. *Kellogg,* 2 Johns. 1; *Wotten* v. *Hill,* 2 Saund. 177, notes 8, 10; *Webb* v. *Alexander,* 7 Wend. 281, 284; *Lansing* v. *Van Alstine,* 2 Wend. 565, (note). The only exception to this rule, is where the covenantor himself enters tortiously and without title. This is a breach. *Corus'* case, Cro. Eliz. 544; *Crope* v. *Young,* 2 Show. 415; *Dyett* v. *Pendleton,* 8 Cowen, 727; *Sedgwick* v. *Hollenback,* 7 Johns. 380; *Floyd* v. *Tompkins,* 1 T. R. 660. And it is not sufficient to show, in order to constitute a breach of the covenant of warranty or of quiet enjoyment, that there is an outstanding title, or that there are persons in possession, holding adversely; but it must be shown that such persons are in under that title, and that in consequence thereof the covenantee can not get possession. *Jenkins* v. *Hopkins,* 8 Pick. 346, 350. And when there has been an eviction by suit at law, it must appear affirmatively that the covenantee was thus evicted by a paramount title. *Kelly* v. *Dutch Church,* 2 Hill's (N. Y.) R. 105, 111, 113, 114; *Grannis* v. *Clark,* 8 Cowen, 36. It is the general rule, that a covenant of warranty is not broken

Beebe *v.* Swartwout.

till eviction or ouster under paramount title. *Twambly* v. *Henly*, 4 Mass. 441, 442; *Bearce* v. *Jackson*, Ib. 408, 410. And the party alleging the paramount title must prove it. *Emerson* v. *Proprietors, &c.* 464, 465; 2 Hill's (N.Y.) R. 113 114; *Chappel* v. *Bull*, 17 Mass. 213, 218. And where there has been no possession there can be no eviction as is said. 17 Mass. 219. But a party, whether in possession or out of possession, under a covenant of warranty, or of quiet enjoyment, may voluntarily yield to a paramount title, and this will be an eviction within the meaning of the covenant. But the burden of the proof is upon him, to show that the title was in fact paramount, while an eviction at law would be conclusive proof of that fact. *Hamilton* v. *Cutts*, 4 Mass. 349, 352; *Greenwault* v. *Davis*, 4 Hill's (N. Y.) R. 643-5-6; *Stone* v. *Hooker*, 9 Cowen, 157. Or being in possession he may buy in an outstanding title, or perfected incumbrance, under which possession might have been obtained, and on which demand of possession has been made. *Sprague* v. *Baker*, 17 Mass. 586, 590; *White* v. *Whitney*, 3 Metc. 81, 88. But the mere existence of the paramount title, or of the right to possession in a third person, is not sufficient. Some particular act of disturbance must be shown, as demand of possession, &c.; otherwise the covenantee has no right to abandon the premises, or buy in an outstanding claim. 4 Mass. 352; 17 do. 590. *Francis'* case, 8 Coke, 89; 2 Saund. 181, note 10. If the lands are unoccupied, it is sufficient that a third person exercises acts of ownership under paramount title; but if they are occupied, there must be an actual ejectment or disturbance. *Saint John* v. *Palmer*, 5 Hill's (N. Y.) R. 600. And being in possession of land with a claim of title, is not sufficient to prove the title in favor of a covenantee, in a covenant for quiet enjoyment. *Kelly* v. *Dutch Church*, 2 Hill's (N. Y.) R. 112, 113.

II. But it has been decided in Vermont, that in order to constitute a breach of the warranty of title, it is not necessary to prove an eviction, where the covenantee never had possession; that to maintain the action on the covenant, it is only necessary to commence an action of ejectment against

the person in possession, give notice to the warrantor, and fail to establish the title. *Park* v. *Bates,* 12 Verm. 381. To this we answer: 1. That decision is a mere *obiter dictum,* as the point did not properly arise in the case. 2. It is not sustained by the authorities on which it was based, to wit, *Ludwell* v. *Newman,* 6 T. R. 458; 5 Went. Pl. 53; *Hawkes* v. *Overton,* 31 Eng. Com. Law R. 356. Now these are all cases on covenants for quiet enjoyment in leases where the possession was refused or disturbed by the lessor; a case in which, as has been already shown, it is not necessary to show an eviction or disturbance under title. 3. An attempt to apply this decision to the present case, is to confound the covenant of warranty of title with the cov-/ enant for quiet enjoyment; a covenant which goes to the title with a covenant which goes only to the possession, and which is broken only when eviction, or disturbance, or ouster occurs under *title.* 4. The decision may have been right, as it related to the particular case, as the warrantor was bound by his covenant to show title, and being vouched, a decision against his title was conclusive on him. *Somerville* v. *Hamilton,* 4 Peters' Cond. R. 436; 2 Thomas' Coke, 245, and note A.

III. If the case of *Grannis* v. *Clark,* 8 Cowen, 36, is used against us, we reply: In that case, the word *demise* in a lease for years is a covenant of title in the lessor, and of power to make the lease. The principle on which the decision was made, was that the covenant was broken as soon as made. The case referred to in the decision of the Court (6 Johns. 50,) was of a covenant broken immediately; the lessee is not, in such case, bound to enter the premises, and commit a trespass. The covenant in *Grannis* v. *Clark* is not therefore a covenant for quiet enjoyment, properly so called. The word *demise* imports a covenant of power to lease, (1 Saund. 332, note 2,) and is analogous to a covenant of power to sell contained in a conveyance in fee, which is similar to a covenant of seizin, and, like a covenant of seizin, is broken as soon as made, (*Howell* v. *Richards,* 11 East, 633, 641; *Sedgwick* v. *Hollenbach,* 7 Johns. 376;) while

the covenant of warranty and quiet enjoyment are wholly prospective, and run with the land, ( 4 Kent's Com. 470–471 ); and the covenant of quiet enjoyment, being thus broken only where there is a union of paramount title and disturbance, the covenantee is bound to enter if he can peaceably, though he thereby commit a trespass.   *Grannis* v. *Clark,* 8 Cowen, 36, 40; *Greenwault* v. *Davis,* 4 Hill's (N. Y.) R. 644; *Kortz* v. *Carpenter,* 5 Johns. 120.   And for the same reason that a covenant against incumbrances is broken as soon as it is made, ( *Tufts* v. *Adams,* 8 Pick. 547,) the covenantee, where the incumbrance ripens into title, is not bound to enter and commit a trespass.   *Jenkins* v. *Hopkins,* 8 Pick. 349. And the case of *Howell* v. *Richards,* 11 East, 633, 641–2, shows clearly the distinction and the true reason for the distinction between the covenant for quiet enjoyment and the covenant of warranty of title.

IV.   But it is said that in this case there was and is an adverse possession in Beebe and others *under title,* this possession being *prima facie* evidence of title, to which we answer: 1.   The law requires, to constitute a breach, two facts; 1st, possession, and 2d, title.   The argument requires proof of but one fact, *the possession;* for if the title is to be inferred from the mere possession, then, in effect, the mere possession constitutes the breach.   It is not enough, however, to show possession; the title and the nature of it, and the person in whom it resides, must be specifically shown in pleading.   *Grannis* v. *Clark,* 8 Cowen, 36; 5 Went. Pl. 66. Nor is the possession under claim of title sufficient evidence of title to constitute a breach of this covenant.   *Kelly* v. *Dutch Church,* 2 Hill's (N. Y.) R. 112–113.   So in relation to the covenant of warranty of *title.   Jenkins* v. *Hopkins,* 8 Pick. 346, 350; *Sprague* v. *Baker,* 17 Mass. 586.   2. The defendants have in their deeds set out, by abstract in the bill of exceptions, their title papers, which, in fact, show that they had no title.   3. The defendants and others have shown neither paper title nor the extent of their occupancy; and the doctrine that possession is *prima facie* evidence of title relates only to *actual occupancy,* in the absence of

paper title. 2 Black. Com. 196. As to mixed possession, under true and false titles, see *Green* v. *Liter*, 3 Peters' Cond. R. 170.

Where the defendant relies solely on possession with an assertion of title, his seizin and possession is confined to actual occupancy, or enclosure and improvements. *Jackson* v. *Shoemaker*, 2 Johns. 230; *Jackson* v. *Camp*, 1 Cowen, 605, 609; *Jackson* v. *Woodruff*, Ib. 276.

V. As to the measure of damages. On a covenant of warranty, the measure of damages is the value of the land at the execution of the deed, and the rule is the same on a breach of the covenant for quiet enjoyment. 4 Kent's Com. 476. And if the eviction or ouster be of only a part of the premises purchased, the measure of damages in the covenant for quiet enjoyment is the relative value of the land lost to the whole—the principal with six years' interest. *Wager* v. *Schuyler*, 1 Wend. 533; *Webb* v. *Alexander*, 7 do. 286. And in relation to a covenant of title, the amount paid to extinguish an outstanding paramount title, is the measure of damages. *Leffingwell* v. *Elliott*, 10 Pick. 204; *Thayer* v. *Clemence*, 22 do. 490.

VI. Now it is well settled that at law, in the absence of fraud, the grantee can have no remedy beyond his covenants. *Frost* v. *Raymond*, 2 Caines, 188; *Bree* v. *Holbeck*, Doug. 654; *Emerson* v. *County of Washington*, 9 Greenl. 88. The fact that the grantee was, at the time of the conveyance, in possession of a part of the premises, is immaterial. Unless he can show that he was imposed upon and induced by improper means to accept of the deed, he must look only to his covenants. *Jackson* v. *Ayres*, 14 Johns. 224; *Fitch* v. *Baldwin*, 17 do. 161, 165. And this rule of law is adopted to its full extent in Courts of Equity. Where there are covenants, the ground of relief beyond those covenants is fraud. *Abbott* v. *Allen*, 2 Johns. Ch. R. 519, 523–4; *Woodruff* v. *Bruce*, 9 Paige, 443–4; *Gouverneur* v. *Elmendorf*, 5 Johns. Ch. R. 79, 84, 87; *Chesterman* v. *Gardner*, Ib. 29; 1 Sugden on Vendors, 554–5; 2 do. 103; *Parkum* v. *Randolph*, 4 How. (Miss.) R. 435, 450, 452.

Nor does the fact that there was an adverse possession at the time of the sale make any difference where there was no fraud. *Gouverneur* v. *Elmendorf*, 5 Johns. Ch. R. 87; And particularly where both parties knew of the possession, in which case there could be no fraud. *Whitney* v. *Lewis*, 21 Wend. 133. Where the deed has been made, and the bond and mortgage taken for the purchase money, on a bill to set aside the bond and mortgage for the failure of title, the Court will look at the covenants in the deed to see if they are broken. If they are not broken, no relief will be granted even though it appear that there is an outstanding title which may be paramount to that conveyed by the deed. A Court of Equity is no place to try legal titles. *Bumpus* v. *Platner*, 1 Johns. Ch. R. 213, 218; *Prewit* v. *Kenton*, 3 Bibb, 280. Nor will the Court interfere to stop the payment of purchase money to prevent circuity of action when the question depends upon a legal title, brought up directly by the bill and which question has not been settled at law. *Abbott* v. *Allen*, 2 Johns. Ch. R. 524. And even if the covenants are broken, and the case is one for the consideration of a Court of Equity, the Court will act on the principle of cross actions and decree offset to the extent only of the breach. *Simpson* v. *Hawkins*, 1 Dana, 305.

As to the alleged parol contract. No parol evidence of a verbal contract before or at the time of the deed is admissible to materially vary the written contract. *Lane* v. *Sharp*, 3 Scam. 566. Whatever was said between the parties before or at the time of the making of the deed was merged in the deed. *Stephens* v. *Cooper*, 1 Johns. Ch. R. 425; *Parkhurst* v. *Van Cortland*, Ib., 273.

The Opinion of the Court was delivered by

KOERNER, J.* This case was heard at the September term of the Adams Circuit Court, A. D. 1845, when the Court dismissed the cross-bill filed by Beebe, the defendant below, and rendered a decree of foreclosure in favor of

---

* YOUNG, J. did not sit in this case.

Swartwout, the original complainant below. The dismissal of defendant's cross-bill, and the rendition of decree in favor of complainant, Swartwout, by the Court below, is now assigned for error. For a proper understanding of the decision of the Court in this case, I have deemed it necessary to give the following abstract of the pleadings and evidence in the cause:

On the first of June, 1840, Swartwout filed his bill in the Adams Circuit Court, to foreclose a mortgage executed by Beebe to him upon the south east quarter of section four, township three south, eight west, for the sum of $1200. Beebe answered the bill, stating in his answer most of the facts set out in the cross-bill afterwards filed, and Swartwout filed his replication. Beebe subsequently filed a cross-bill, leave having been obtained for that purpose, which alleges, that he purchased from said Swartwout the said tract of land on the 7th day of September, 1837, paid him $300 in cash, and gave mortgage and bond for the balance, $1200; the whole being $1500, payable in instalments. That Swartwout and wife executed a deed to said Beebe, on the said 7th of September, with a covenant, "that they would warrant and defend the premises in the quiet and peaceable possession of said Beebe, his heirs and assigns, against themselves, their heirs, and against all and every person and persons whomsoever, lawfully claiming and to claim the same." That before and after said deed was made, as well as at the time, said Swartwout agreed to put said Beebe in the quiet possession of said land before the instalments should become due in the mortgage, and that payment of them should not be demanded until possession was given. That before the said sale, and at the time thereof, Beebe was in possession of forty acres of the said land, claiming under another and a different title from Swartwout, and the remaining one hundred and twenty acres were, and had been for some time previous, in the possession of Amos Beebe, Rial Crandall and William Blackwell, respectively, claiming also under a title different from and independent of said Swartwout's title. That in January, 1838, Swartwout commenced in Beebe's name an action

of ejectment to recover possession from Grigsby of a part of the land, but discontinued it afterwards. That Swartwout has never put him in possession of the land, nor made any other attempt to do so, and that he retains possession only of the forty acres, which he held under a different and independent title before he had anything to do with Swartwout at all. That before and at the time of the sale, Swartwout falsely and fraudulently represented that he had a good title to the land, and that he, Beebe, bought it, relying on that representation, paying a price for it, which was a full equivalent for the land, with a clear and indefeasible title, and that it was so understood at the time. That Swartwout, although requested, hath always failed and refused to exhibit his title, and he believes the said title is not good. That in Swartwout's deed to Beebe, his chain of title is recited as the same granted to Benjamin Hobbs, the patentee, and conveyed by deed from him by his attorney to Francis Gantz, jr., by like deed from him; said Gantz on the 9th of May, 1818, granted to Samuel Chard, and by deed, on the 1st of August, 1837, from G. W. Snedeker and his wife, heirs of Chard, to Swartwout. That in the records of Adams county, transcribed from Madison county, is a power of attorney from Benjamin Hobbs to John L. Bogardus, dated 5th of August, 1815, made before the Patent issued, and purporting to authorize Bogardus to sell said land when the Patent should issue, and there is also on said records a deed from Bogardus to said Francis Gantz, junior, which recites said power of attorney, and purports to convey the land, which said deed, however, is signed by said Bogardus in his own name, the name of the principal appearing in the recital only; and there is also on said record in Adams county, a deed from Francis Gantz, jr., to Samuel Chard, conveying this land among other tracts, dated 10th May, 1818, but of which the certificate of acknowledgment is the 9th of May, 1818. That Swartwout is embarrassed and insolvent, and that Beebe fears he will lose what he has paid him, and all that he may be compelled to pay. That Swartwout has commenced suit on the mortgage, alleges the sub-

sequent proceedings thereon, and concludes with praying that Swartwout be enjoined, be compelled to produce his title and put Beebe in possession, or that the contract be rescinded, and money repaid, and for general relief.

To this cross-bill Swartwout filed his answer, in which he admits the execution of the deed and the covenant as stated. Denies any understanding as to possession, except what is expressed in the covenant in the deed, either before, at, or after the execution of the deed. Denies that any time was mentioned or agreed upon for giving Beebe possession, but avers that he was placed in possession from the time of making the deed, according to the true intent and meaning of the covenant therein, and has not been disturbed in, or evicted from said possession. He alleges that he believes it to be true, that Amos Beebe was in possession of forty acres at the time of the sale, but that said Beebe never pretended to claim under any other title at said time, and avers that subsequent to the purchase, and in accordance with the agreement between this defendant and said complainant, said Amos Beebe surrendered the possession to said complainant, Silas Beebe, &c., and also admits an agreement between himself and said Silas Beebe at the time of the purchase in relation to fifty acres, then represented by said Silas Beebe to be in possession of William Blackwell, by which Beebe was to bring an ejectment against Blackwell, and if it proved unsuccessful, was to deduct a proportionate amount from the purchase money; and if he, Swartwout, should be able to procure possession of said Blackwell's tract within a reasonable time, he was to deliver it to Beebe; and he avers that the possession of said Blackwell's tract became vacant and he tendered it to Beebe, who refused it. That subsequently Grigsby got into possession, and Beebe brought the action of ejectment against him. Denies that he was to bring the action of ejectment, and denies any concern with it, except the employment of William Darling at the request of Amos Beebe, complainant's father, to assist the counsel of Silas Beebe, and alleges that he exercised no kind of control over

said suit, and that if said suit was dismissed, it was without the knowledge, consent, or advice of him, the said Swartwout. Admits that at the time of the purchase, besides the parts in possession of Amos Beebe and William Blackwell, that Silas Beebe, the complainant, had possession of forty acres, and Rial Crandall had possession of thirty acres, and avers that complainant had notice of the possession of all these persons at the time of the purchase. Alleges that he represented his title to be good and perfect, and that it is the same recited in his deed. Avers that he exhibited his chain of title to Beebe before the purchase, who examined and approved it, and has had it ever since, and purchased on the strength of said examination, and denies that he made any false or fraudulent representations. Admits that he is embarrassed and cannot pay his debts, but that he could pay his debts if other people (especially the complainant,) would pay him what they owed him, &c. Admits the payment of the $300, as alleged in the bill, and the suit on the mortgage for the balance of $1200, and resists the relief prayed for.

Beebe filed a general replication to the answer.

The deposition of Benjamin Grigsby proves, that on the 5th of September, 1837, all the improved land in the south half of section four, township three, eight west, (embracing this, south east, quarter and the south west quarter) was occupied by Amos Beebe, Silas Beebe, Rial Crandall, Steele and Blackwell, except twenty two acres in the south west corner, (not in this quarter,) which was then unoccupied, but had been and was afterwards occupied by tenants of John B. Young. The two Beebes and Crandall claimed in their own right, Steele claimed as tenant to Silas Beebe, Blackwell as tenant to Slayton, who was guardian for Singleton's heirs, Crandall had possession of fifteen or sixteen acres, claiming sixty, lying in both quarter sections, Blackwell had about eighteen acres, claiming fifty, lying in both quarter sections. The other depositions are pretty much to the same effect. It appears further, that it is agreed between the two parties that the possession of the several tracts or parcels of land set out in the depositions by Young, Crandall, Blackwell and Steele, had been so held at the time of

the sale from Swartwout to Beebe, and from that time ever since, and also, that such adverse possession was known to Beebe at the time of the purchase. It is also admitted upon the record, that a judgment to the amount of about $400, exclusive of costs, was standing in Adams county against Swartwout unsatisfied. That execution had been issued to the sheriff of said county, and after due search and inquiry it was returned "no property found." The abstract of deeds from the Recorder's Office was admitted, on which appears the chain of title to Swartwout, already set out, being the only title to him of record; also, copies of the power of attorney to Bogardus and the deed from him to Gantz. In the abstract there appear a number of other deeds to the whole and to parts of the land, which are unconnected with Swartwout's title, but at the same time showing no title in the persons in possession.

. From the pleadings of the parties and the evidence adduced as shown by this abstract, we think the following case to be established: That Swartwout's title when he conveyed to Beebe was technically defective, so far at least as the execution of the deed by Bogardus, who was an agent merely, is concerned, that at the time when he covenanted for quiet enjoyment, both parties knew the fact that other persons were actually in possession of portions of the premises, not claiming from the covenantor, but that Swartwout did not know that they set up any title; that there was no other agreement between the parties legally binding upon Swartwout, as to the surrender of possession, or forbearance to sue until possession was obtained by Beebe; that Swartwout, however, employed assistant counsel in an action of ejectment brought by Beebe against one of the parties in possession, which suit Beebe had dismissed without the consent or knowledge of Swartwout; that some time elapsed between the commencement of the negotiation and its completion, and that the title papers of Swartwout were shown to Beebe and examined by him, the deed to the latter, moreover, reciting the chain of title; that no fraud was practiced by Swartwout, nothing appearing to induce the belief that he did not think his title as good, as Beebe must have thought

it was, at the time he purchased; that Swartwout is insolvent, or at least unable to answer in damages in an action of covenant, should. that be successfully maintained against him in a Court of Law; and lastly, that the persons in possession have no better or paramount title to the one conveyed by Swartwout, nor indeed a connected paper title of any kind.

We are now called upon to pronounce the law arising on these facts, and to decide whether Beebe, the defendant in the bill of foreclosure, but complainant in the cross-bill, is entitled to the relief for which he has asked. Before, however, advancing to the main legal points in the case, I deem it proper to dispose of some other questions of a preliminary character. There being no proof, in the opinion of the Court, of fraud having been committed by Swartwout, or of any misrepresentations having been made by him to complainant Beebe, it is clear that a Court of Chancery would have no jurisdiction, were it not for the fact of defendant's inability to pay damages in case a recovery were had against him on the covenant. It is this circumstance alone which confers jurisdiction on the Chancellor, under the head of preventing irreparable mischief. Beebe's counsel, it is true, have sought to invoke the aid of Chancery, on the ground of mistake, insisting that when a person has paid money for nothing by mistake, whether such mistake was one of fact or even of law, Equity will always interfere and prevent the collection of the purchase money. It will be observed, however, in the first place, that Swartwout does not seek to collect the purchase money in this case; he simply asks to have the equity of redemption foreclosed, if the purchase money is not paid. He cannot obtain a judgment against Beebe and pay himself out of the general property of Beebe. If he obtains any money at all it is out of the special fund, the land, upon which he holds a mortgage. In this view of the case, the failure of title in his grantor can hardly affect him. His equity of redemption is worthless, if the legal title to the premises fail. In the next place, it is clear that in this case there was no mistake in fact, inasmuch as the proof shows that Beebe examined the title papers and

had full knowledge of the existing possessions at and before the time of the sale. Although it may be conceded, that in some particular and doubtful cases, Courts of Equity have construed mistakes of law into mistakes of fact for the purpose of preventing gross injustice, yet it would be doing violence to every rule of law to say that a failure of perceiving the legal defect in the execution of a deed, as was the case here, amounted to a mistake of fact. In a mistake of law, where legal counsel could have been readily procured, the rule that ignorance of law is always fatal, (*error juris nocet,*) knows of no exception in the Civil Law, from which we have adopted the general doctrine respecting the effect of mistakes on the contracts and legal obligations of parties, and I am not aware that the Courts of Chancery in Great Britain or this country have ever changed this well established principle. This, then, being neither a case of fraud or mistake, but one in which Chancery only acts upon the principle that the remedy at law, if obtained, affords no actual but merely nominal relief, on account of the inability of the defendant to pay the damages, it seems necessarily to follow, that we have to divest ourselves from all other extraneous circumstances, and that we have to confine ourselves to the sole question, whether Beebe, if he were to sue at law, would recover on the covenant of quiet enjoyment; or in other words, whether the facts of the case as presented here, constitute a breach of the covenant of quiet enjoyment.

As far as one branch of this controversy is concerned, there is but little difficulty in settling it. I refer to the alleged breach of covenant for quiet enjoyment of the forty acres of the land in question, which was in possession of the vendee, Silas Beebe, when he purchased of Swartwout. Whatever title he may have had in himself at that time, and however adverse his possession to any right of Swartwout's to the land, he is estopped from setting it up now against his vendor. By taking a deed from his grantor, he conceded to him as far as respects any liability under the covenant at least, a superior title. In 17 Johns. 166, the Court say: "That it can never be permitted to a person to accept a

deed with covenants of seizin, and then turn round upon his grantor and allege that his covenant is broken, for that at the time he accepted the deed, he himself was seized of the premises." What is there said of a covenant of seizin does apply, in my opinion, with still greater force to a covenant of quiet enjoyment.

I will now pass to the principal point in the case, in the discussion of which, as indeed of all other questions in this case, counsel on both sides have exhibited an unusual degree of research. Our attention has been directed to a very great number of authorities, which in justice to the counsel and their cause, I have examined with some care.

It may not be unprofitable in the outset to advert to a few general principles respecting the nature of the covenant for quiet enjoyment, and the evidence necessary to establish a breach of it. A covenant for quiet enjoyment is of a prospective character; it is in the nature of a real covenant, runs with the land, descends to the heirs, and vests in assignees and purchasers. 4 Kent, 471. It is one which goes to the possession and not to the title. 5 Johns. 121. To constitute a breach of it, an actual ouster and eviction is necessary. 4 Kent, 471. The covenant for quiet enjoyment requires the assignment of a breach by a specific ouster or eviction by paramount legal title. 4 Kent, 479; 3 Johns. 471; 2 Johns. Ch. R. 522. To sustain an action for the breach of the covenant for quiet enjoyment, it must appear that the grantee has been evicted by title both lawful and paramount. 2 Hill's (N. Y.) R. 105. There must be an actual eviction or disturbance of the possession of the covenantee. 5 Johns. 121. Most of the principles here stated are also applicable to the covenant of warranty, and as a general thing, are familiar to Courts and the profession. The great difficulty arising in this as in many other cases, consists in this, that Courts have departed (and I think not improperly,) from the stern technical rules of requiring actual ouster and eviction in cases both of breach of warranty and covenant for quiet enjoyment, and have held many acts, or rather the concurrence of certain acts, as being equivalent to actual

eviction by due process of law. It is not surprising that in deciding what shall be considered, not as acts of eviction, but as acts equivalent in law to actual eviction, and what shall not be so considered, some conflict of views has occurred, so much so, that it may almost be said, that where no actual legal eviction has taken place, no general rule applicable to all cases can be laid down, and that each particular case must be determined on its own merits.

It is not contended here, and indeed the circumstances of the case forbid the idea, that the appellant was actually ousted from the land purchased by persons having better or paramount title; but the position assumed by counsel, as I understand it, is this: "The adverse possession of Grigsby and others, coupled with defect of title in Swartwout and his grantee, and the consequent inability of Beebe, to obtain possession, are equivalent to an actual legal eviction, and sustain an action for breach of covenant." In support of this proposition, we have been cited to very numerous authorities, some of which, and which are those which I consider the most favorable for this position, I will now proceed to review. The case of *Ludwell* v. *Newman*, 6 Term Reports, 458, I find to be a case where the disturber of the possession claimed under a prior lease from the defendant who was the covenantor. The case in 4 Mass. 352, was a case where the possession had been demanded of the covenantee, by one who held a prior mortgage from the original grantor, under whom, though remotely, the covenantee claimed. The case of *Hawkes* v. *Orton*, 5 Ad.& Ellis, 356, was a case where the breach of the covenant was committed by the covenantor himself. The precedent in 5 Wentworth's Pleading, 53, 55, is for a case where the disturbance was committed by one claiming under the covenantor. These authorities, and also a case in 7 Johns. 376, confirm the rule, that when the covenantor himself does an act asserting title, it will constitute a breach of the covenant for quiet enjoyment, but go no farther. And even this doctrine is rather an exception to the general rule, and was not formerly recognized. 1 Roll. Abr. 429, pl. 7. The cove-

nant for quiet enjoyment extends to lawful disturbances only, and not to tortious acts. Sugden on Vendors, 85, bottom page. And in case of the covenantor disturbing the possession, he must do so asserting title, or else there is no breach. Ibid. 84, bottom page. It is manifest that this doctrine does not apply to the case now under consideration, as there is no pretence that either the covenantor, or any one claiming under him, is alleged to have disturbed the possession of Beebe. The disturbers here hold, not only independent of the covenantor, but, as it is said, adversely to him. This disposes of one class of cases cited by appellant. There is, however, another which seems to be more favorable to his position. Under the latter class falls, in my opinion, the case of *Duval* v. *Craig*, 4 Peters' Cond. R. 32, where it is said, that if the grantee be unable to obtain possession in consequence of an existing possession, by a person claiming and holding under an elder title, this would certainly be equivalent to an eviction and breach of the covenant. So the case in 4 Mass. 490, where it is decided that lawful disturbance, by a stranger having a paramount title, and where some particular act is shown, by which the plaintiff is disturbed, amounts to a breach of covenant for quiet enjoyment. To this effect is, also, the case in 17 Mass. 589; see, also, 3 Fairfield, 499; 1 U. S. Dig. 687, and 293, where it is laid down, that although the mere existence of a better title is not a breach of this covenant, sufficient to give an action thereon, yet if it be accompanied with possession under it, commenced before the deed containing such covenant was executed, it will amount to a breach of covenant. 3 Dev. 200. In *Foster* v. *Pierson*, 4 Term R. 117, the Court, in their decision, speak of a disturber having *lawful* title, the word lawful being italicised in the report. The case in 15 Pickering, 149, was a case where the lessee of the covenantor was disturbed by the mortgagee, after the mortgagor, who was the covenantor, had failed to pay the mortgage, and this was held equivalent to an actual ouster and eviction. I find no difficulty in arranging under this head also two other cases, cited by the appellant, and on

which he seems to have placed a great deal of reliance. I mean the cases in 8 Cowen, 36, and 12 Vermont, 85. In the first case, the declaration of the covenantee alleged that his covenantor, neither at the date of the lease nor since, was seized of the premises and had no interest therein, which would authorize him to demise; and that the plaintiff could not enter, but was by the rightful owner of the premises ,hindered and could not quietly hold and possess the same. Here no eviction was alleged, and the Court say: "this was was not necessary; nor indeed could there be any eviction where the lessee never had possession." The complaint is, that from want of title in the lessor, the lessee could not get possession, but was kept out by the true owner. The substance of the decision in the 12th Vermont, is contained in the following passage in the Opinion of the Court, delivered by Williams, Ch. J. "I apprehend that on the covenant for quiet enjoyment, and *a fortiori* on this covenant of warranty, it is not necessary to state and prove a technical eviction, but the action may be maintained, if the plaintiff is hindered or prevented by any one having a better right, from entering and enjoying the premises granted." Now what is the rule which may be extracted from all these cases? Is it, that the mere possession or intrusion of a stranger claiming title, or right of possession, amounts to a breach of covenant for quiet enjoyment? I think not. None of the cases just considered go that far. It will be perceived that in every one of them, the disturber of the possession, enters, or holds possession, having or claiming an "elder," a "better," a "lawful," or a "paramount title." They clearly establish the principle, that to constitute the breach, there must be a union of acts of disturbance and lawful title. It is not denied by appellant's counsel, that the decisions found in the New York Reports all go to affirm the doctrine just stated, and that they go even much farther, and require, in many cases, strict technical eviction, where other Courts have been much more indulgent. In 7th Wendell, 281, it was held, that it is not sufficient evidence of a breach of this covenant (quiet enjoyment) that the covenantee has been

sued and recovery had against him in trespass by a third person claiming title to the land, unless the plaintiff avers and proves that such person, before or at the date of the covenant, had lawful title, and by virtue thereof, entered and arrested the plaintiff. See also as to this point, 4 Hill's (N. Y.) R. 643, 645; 2 do. 112, 113. This rule that it requires disturbance and lawful title to constitute a breach of this covenant, is well supported by decisions in other States besides New York. See 4 Mass. 352; 17 do. 589, 590, and 8 Pickering, 350, which last case I consider a case peculiarly apposite, and where the Court say, "that it is not sufficient in order to .constitute a breach of the covenant of warranty, (or of quiet enjoyment), to show that there is an outstanding title, and that in consequence thereof the covenantee could not get possession." "The depositions," the Court goes on to say, "show an actual possession and occupancy, and payment of taxes by several persons; but there is no legal evidence of their title. The fact of possession as proved by the witnesses stands disconnected from any title, and therefore we cannot know, that it was not unlawful, and if it was so, it is no breach of the covenant of warranty." The case in 1 Speers, 120, I also hold to be affirmatory of our views. Let us now apply this rule to the case at bar. There is no averment in Beebe's bill, that the persons in possession at the time of his purchase had any lawful title, or any present right of possession; there is no proof indeed that they had any title whatever. The complainant has undoubtedly made the strongest case here, which he could have possibly made in a Court of Law from the facts as they were. But had he failed to aver in his declaration, or to prove upon the trial that the persons in possession had a good or better title, he could not have recovered. For aught we know, the persons in possession claim under Beebe, the appellant himself, while he himself has taken a title from the covenantor. The appellant has made no effort whatever, as I think, to assert his own rights, or at least, to ascertain the real rights of the disturber, for the action of ejectment, dismissed by him, before his title

was ever passed upon, cannot be considered in such a light. These disturbers may yield to his title such as it is, (and it is very likely that it may be capable of being perfected, though we are not called upon to express an opinion on this point), upon a demand of possession made by him. It appears to me, that he must exert himself in some way to enjoy his possession, or must affirmatively prove that his adversaries have paramount and superior title to his, so that his struggle would be unavailing, before he can sue on the covenant, or obtain redress in a Court of Chancery. He must not only show that he is weak, for weak as he may be, he may yet be strong enough for his adversaries, but he must show that his adversaries are stronger than he is. To paramount title, provided he can establish it, he may peaceably and voluntarily yield; but he cannot be permitted to abandon the premises or buy in an outstanding claim, where a mere claim is set up by another, which may be destitute of all foundation, or may rest on a fabric of his own construction.    2 Saund. 181 *a,* note 10; 4 Mass. 352; 17 do. 590; *Francis'* case, 8 Coke, 89.

*In conclusion,* I will advert to another question, which, as it has been made, I deem it best to consider, and that is, the kind of relief which would have to be granted in case that the Court should have been satisfied that the covenant had been broken.  It will be recollected that Beebe prays that Swartwout be enjoined from the collection of any of the purchase money, be compelled to produce his title, and to put Beebe in possession; or, that on failure to put him so in possession, the contract be rescinded, and the money already paid on the land be repaid to Beebe.    This Court is of opinion, that under the circumstances of this case, the relief specially asked for by Beebe, that is, a rescission of the of the contract, could not be granted to the appellant, Beebe. There is a distinction between contracts of an executory character and those which are fully executed by deeds or conveyances.    In the latter case there can be no rescission of the contract, unless it has been tainted by actual fraud. In a case like the present, unaffected by fraud, and where it

Beebe *v.* Swartwout.

moreover appears that the contract, if broken at all, is only broken as to part of the premises conveyed,—for the land not actually occupied by others, or occupied by Beebe himself, cannot be embraced in the breach,—all that the appellant would be entitled to, under the prayer for general relief, would be to obtain an injunction to restrain the collection of the purchase money, and to have it finally set off against the damages sustained. 1 Dana, 305.

To recapitulate, then, we are of opinion, 1st. That, under the circumstances of this case, Chancery could only afford relief, if the appellant could have successfully maintained an action on the covenant for quiet enjoyment, at law. 2d. That, at law, he would have failed to do so, as he does not insist that the persons who are in possession, and prevent him from taking possession, have a valid and paramount title; it being necessary, before a recovery can be had on this covenant, to show both acts of disturbance and paramount title, or at least a right of possession. 3d. That the facts presented in the case, if sufficient to entitle him to some relief, would yet not have warranted a rescission of the contract, but would have given him a right to set off his damages against the purchase money.

The decree below dismissing the cross-bill and rendering a decree of foreclosure in favor of the original complainant, is affirmed, at the costs of the appellant, Beebe.

*Decree affirmed.*