[No. 13326.   Department One.   March 24, 1917.]

FRANK HOYT *et al.*, *Respondents*, v. L. A. ROTHE *et al.*,

*Appellants.*[1]

COVENANTS — INCUMBRANCES — HIGHWAYS.   A public highway is
impliedly exempted from the effect of a covenant against incum-
brances.

SAME—WARRANTY—EVICTION.— PARAMOUNT TITLE — PROOF.   Upon
an issue as to breach of warranty by partial eviction by one who
disputes the boundary line, paramount title need not necessarily be
proved by the record, since adverse possession may support title.

SAME—WARRANTY—BREACH — REMEDIES OF VENDEE — PARAMOUNT
TITLE—BURDEN OF PROOF.   Where, upon a sale of land by general
warranty, a part of the land is in the possession of another who
refuses to quit on demand, the vendee may rescind the contract or
he may affirm and claim damages to the extent of the value of the
part withheld, and counterclaim therefor in an action for the price;
and if he does so he must assume the burden of proving paramount
title.

SAME—WARRANTIES—BREACH—EVICTION—PARAMOUNT TITLE—EVI-
DENCE—SUFFICIENCY.   The vendee under a warranty deed, counter-
claiming in an action for the price for the value of the part of the
land in the possession of another, does not sustain the burden of
showing a paramount title in the third party, where it appears that
there was a shortage in the land inclosed, and the third party, an
adjoining landowner, merely claimed to the true boundary line, and
refused to accept a survey of the particular tract while agreeing to
abide by a survey of the whole section.

Appeal from a judgment of the superior court for Spokane
county, Huneke, J., entered July 15, 1915, in favor of the
plaintiffs by direction of the court, in an action for con-
version, after a trial to the court and a jury.   Affirmed.

*Davis & Heil*, for appellants.

*Mulligan & Bardsley*, for respondents.

CHADWICK, J.—Respondents were the record owners of a
certain tract of land situate in Spokane county and described
as follows, to wit:

[1]Reported in 163 Pac. 925.

"Beginning at a point on the east line of the southeast quarter of section twenty-four (24), township twenty-seven (27) north, range forty-three (43), E. W. M., 825 feet south of the east quarter corner of said section; running thence west, 1584 feet to a point; thence south 825 feet to a point; thence west 176 feet to a point; thence south 495 feet to a point; thence east 880 feet to a point; thence north 495 feet to a point; thence east 880 feet to a point on the east line of said section, 984.5 feet north of the southeast corner thereof; thence north on the east line of said section, 825 feet to the place of beginning, containing 40 acres."

The land was incumbered by a first mortgage for $2,500, and a second mortgage for $6,400. Appellants owned the second mortgage. Interest and taxes had become delinquent and respondents were unable to meet their payments. It was agreed between the parties that respondents would convey the property to the appellants in consideration of the assumption of the first mortgage, payment of the accumulated interest and taxes, and $450 in merchandise. At the time the trade was made, the merchandise was in Des Moines, Iowa.

Appellants went into possession of the land and, having caused a survey to be made by a deputy county engineer, refused to make the merchandise payment, alleging a breach of the covenants of seizin and general warranty in that there was a shortage in the acreage. The surveyor found that the area defined by the calls of the deed was 40 acres, and that the land included within the fence which surrounded the property was 35.40 acres.

Suit was brought by respondents for the value of the merchandise as for a conversion. Appellants answered, affirming the contract and setting up a breach of the covenants of seizin and warranty, and the value of the land that was not included within the fence as a counterclaim. A jury was called and a trial had. After all the evidence was in, the court discharged the jury and entered a judgment in favor of respondents.

The excluded area consists of two classes of land. Fifty-

seven hundredths of an acre is included in a roadway running along the east side of the property. The balance of the excluded area is within the enclosure of other parties.

It is contended that the .57 of an acre is a public easement; that this easement constitutes a breach of the covenant against incumbrances. While some of the states still follow the rule that, unless there is an express exception in the deed, a public highway falls within the covenant against incumbrances, the weight of authority is to the contrary. The broader view, that a public highway is impliedly exempted from the effect of the covenant, is well sustained and conducive of better results. Unnecessary danger to established titles would follow a declaration of the principle contended for by appellants.

*Whitbeck v. Cook*, 15 Johns. (N. Y.) 483, lays down the preferred rule:

"It must strike the mind with surprise, that a person who purchases a farm, through which a public road runs at the time of purchase, and had so run long before, who must be presumed to have known of the existence of the road, and who chooses to have it included in his purchase, shall turn around on his grantor, and complain that the general covenants in the deed have been broken, by the existence of what he saw when he purchased, and what must have enhanced the value of the farm.

"It is hazarding little to say, that such an attempt is unjust and inequitable, and contrary to the universal understanding of both vendors and purchasers. If it could succeed, a flood-gate of litigation would be opened, and for many years to come, this kind of action would abound. These are serious considerations; and this court ought, if it can, consistently with law, to check the attempt in the bud."

See, also, *Hymes v. Esty*, 133 N. Y. 342, 31 N. E. 105; *Deacons v. Doyle*, 75 Va. 258; *Newmyer v. Roush*, 21 Idaho 106, 120 Pac. 464; *First Unitarian Society v. Citizen's Savings & Trust Co.*, 162 Iowa 389, 142 N. W. 87, 51 L. R. A. (N. S.) 428; *Memmert v. McKeen*, 112 Pa. St. 315, 4 Atl. 542; *Sandum v. Johnson*, 122 Minn. 368, 142 Pac.

878, Ann. Cas. 1914D 1007, 48 L. R. A. (N. S.) 619; *Mc-Lennan v. Prentice*, 85 Wis. 427, 55 N. W. 764.

To show an eviction from the remaining land, appellants rely upon the fact of possession by third parties, and the following conversation as detailed by the appellant husband.

"A.　I told Mr. Blue that I had gone over the land and measured it, and I was of the opinion that it was short, and I showed him the stakes that I had placed there, and what I thought would be about where the lines should be, and he said: 'You are wrong.' He said: 'You are entirely wrong. I think the lines which exist are right.' I said: 'I would like to move my fence.' He said: 'I would object absolutely. I would not allow you to move the fence over only on one condition; if the entire section were surveyed, I would abide *by a survey of the whole section*, because I think there is enough land in the section where each would have his proper proportion by a survey. On this piece of land, I would not consider recognizing other lines.' "

The court held that the only way a paramount title can be proved is by the record; and that, having a deed sufficient in its calls, all appellants have to do is "to go and take the land." We can subscribe to the judgment of the court, but do not approve its reasoning. As a general thing, it may be said that the proper proof of title is by record. This is so in case the title relied on is a record title. All titles are not record titles. It is true also that the acceptance of a deed usually operates as a constructive possession of the property conveyed. Hence the rule that a grantee under a deed of general warranty cannot recover unless evicted by one having a paramount title. Maupin, Marketable Titles to Real Estate (2d ed.), § 146; 2 Devlin, Deeds (2d ed.), § 927; Rawle, Covenants, §§ 136-141; *Morgan v. Henderson*, 2 Wash. Ter. 367, 8 Pac. 491; *Black v. Barto*, 65 Wash. 502, 118 Pac. 623, Ann. Cas. 1913B 846; *Beebe v. Swartwout*, 8 Ill. 162; *Hamilton v. Cutts*, 4 Mass. 348; *Ogden v. Ball*, 40 Minn. 94, 41 N. W. 453; *Shattuck v. Lamb*, 65 N. Y. 499, 22 Am. Rep. 656.

It is likewise true that there are many cases which hold that the possession of one who is an intruder or a trespasser, or one who disputes a boundary line, is not such a possession as will work a constructive eviction and sustain an action upon the covenants of his deed by the grantee. There are, on the other hand, many well considered cases holding that, if land is conveyed by deed of general warranty and a part of it or the whole of it is in the possession of another, the adverse possession operates as a constructive eviction *eo instanti*. Maupin, Marketable Titles to Real Estate (2d ed.), §§ 109, 116, 146.

"The covenant of warranty protects only against an ouster from the possession, and there can, therefore, be no breach of it assigned without alleging an actual eviction. It is true that evidence of a paramount title in a stranger, and that the warrantee, in consequence, yielded up the possession, will support such an allegation, for the law does not require the idle and expensive ceremony of being turned out by legal process, when that result would be inevitable. Still, however, an actual ouster must be set out. It is unnecessary to cite cases to this point, the difference between a covenant of warranty and of seisin being recognized as existing in England and our sister states." *Clarke v. McAnulty*, 3 Serg. & Rawle 363, 371.

The question presented is, so far as we know, a new one in this state. We prefer to adopt that which we conceive to be the better rule, that is, if one sells land to another by a deed of general warranty, and a part or the whole of it is in the possession of another claiming title, and who refuses to quit on demand, the vendee may rely upon his covenant and rescind his contract, or he may affirm his contract and demand damages, or. counterclaim to the extent of the value of the property so withheld in a suit for the purchase price. This ought to be the law, for our case is entirely different from the case of one who buys a piece of land and goes into possession and afterwards finds that some one is asserting a superior title.

Title does not necessarily depend upon record proof. Adverse possession is sufficient to support title, and when sustained by proofs collateral to, or in defiance of, the record title, is potent to overcome a record title. Possession, adverse and hostile for the statutory period, and not the record, supports the fee.

In a suit between the vendor and the vendee, the third party not being before the court, simple justice demands that no man should be compelled, against his will, to accept a lawsuit in consideration of the purchase price of land, or the burden of sustaining a circuity of actions. Reason will not sustain the holding that a vendee, who finds another in possession, must pay the purchase price with the one hand and seek a return of his money by way of an action on the covenant for his damages, or for the value of the thing lost, with the other, or compel him to commit a trespass in order to establish a lawful right in another action. Maupin, Marketable Titles to Real Estate (2d ed.), §§ 180-271, 146 and cases cited. *Smith v. Moore*, 31 Ky. Law 838, 104 S. W. 265.

If, then, a vendee finds another in possession claiming ownership, he may, upon suit for the purchase price, affirm his contract and counterclaim for the value of the property that is withheld. If he does so, he must assume the burden of showing a paramount title in the third party. *Stokely v. Trout*, 3 Watts. (Pa.) 163.

"In an action against the purchaser on a contract for the sale of land, the plaintiff is not bound to show that he has title to the land. The contract admits, at least *prima facie*, his title, and the *onus* is on the defendant to show that he has none." *Breithaupt v. Thurmond* (syllabus), 3 Rich. (S. C.) 216.

The question, then, is whether the appellants have sustained the burden of proof. That they have not, seems evident. They have shown neither a record title nor a title by adverse possession. The land on the west is pasture land, a rocky bluff. It is doubtful whether it is shown that there

is an assertion of hostile ownership to this strip, or that the taking of possession would be resented. It is certain that no showing of adverse possession is made out.

On the north side, thirty-four hundredths of an acre lies without appellants' enclosure. There is testimony to the effect that a row of fruit trees, five years old, are on the disputed tract, and that the land is under cultivation.

Under the testimony quoted and the cases cited, this would not, in itself, make a title by adverse possession. As testified to by appellant husband, the claim of the third party is no more than a claim to the true boundary. The third party does not assert that the true line may not be as contended by appellants, but rather that he is unwilling to accept a survey of the particular tract as final. He says: "I would abide by a survey of the whole section."

We have frequently adopted the statement in *Caufield v. Clark*, 17 Ore. 473, 21 Pac. 443, 11 Am. St. 845:

" 'If one by mistake inclose the land of another, and claim it as his own, his actual possession will work a disseisure, but if ignorant of the boundary line, he makes a mistake in laying his fence, making no claim, however, to the lands up to the fence, but only to the true line as it may be subsequently ascertained, and it turns out that he has inclosed the lands of the adjoining proprietor, his possession of the land is not adverse.' "

See, also, *Wilcox v. Smith*, 38 Wash. 585, 80 Pac. 803.

Appellants have not sustained the burden of proof, and the judgment is affirmed.

ELLIS, C. J., MORRIS, MOUNT, and FULLERTON, JJ., concur.