[No. 20764. Department One. November 2, 1927.]

JOSEPHINE SHAW et al., Appellants, v. EILLEEN M. MORRISON et al., Respondents.[1]

[1] VENDOR AND PURCHASER (48, 52)—RESCISSION BY VENDOR—TIME FOR RESCISSION—WAIVER. A vendor's notice demanding payment of the balance due upon installments after having accepted and applied overdue payments from time to time, is not an effective notice of forfeiture of the contract, which could only be given after reasonable opportunity and time for the vendee's performance.

[2] SAME (64)—RESCISSION BY VENDEE—WAIVER. A vendee's right to rescission of a contract for breach of warranty and recovery of the purchase price paid is waived, where payments were made after knowledge of the breach and no appeal was taken from a judgment allowing damages for the breach but denying rescission.

[3] COVENANTS (6, 17)—OF TITLE—BREACH—KNOWLEDGE OF PARTIES—PUBLIC ROAD. There is a breach of warranty, authorizing recovery of damages, where, after the contract was made, the vendor granted a strip of land through the premises to the county for a public highway, there being no road or highway in existence at the time of the contract of sale, which contained a general warranty of title.

[4] COVENANTS (32)—DAMAGES — BREACH OF WARRANTY — AMOUNT. Damages in the sum of two thousand dollars for breach of warranty of lands, sold for five thousand dollars, cannot be said to be excessive, where the breach consisted in granting a strip for a public highway, so constructed on piles along a beach, as to cut off access to and use of the beach and water front.

[5] COURTS (40)—JUDGMENT (69, 84)—CORRECTION IN SAME COURT—ENTRY OF JUDGMENT — CLERK'S MINUTES. The clerk's minute entry, following observations of the court at the end of a trial, "the court being fully advised, finds for the plaintiffs," is not such a final disposition of the case as to preclude the court from making formal findings and judgment favorable to the defendant, where all parties contemplated and requested formal findings and judgment, which were thereafter presented, and upon argument, formally made and entered.

[6] VENDOR AND PURCHASER (184)—REMEDIES OF PURCHASER—DAMAGES FOR PARTIAL FAILURE OF TITLE. Upon finding a breach of

[1]Reported in 260 Pac. 666.

warranty, entitling defendant to an allowance of damages, it is discretionary to apply the amount allowed on a balance due on the contract, and the excess on installments to grow due in the future.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered April 7, 1927, upon findings in favor of the defendants, in an action to declare a forfeiture, tried on the merits to the court. Affirmed.

*E. R. York* and *A. F. York,* for appellants.

*J. W. Selden* and *Poe, Falknor, Falknor & Emory,* for respondents.

PARKER, J.—The plaintiffs, Mrs. Shaw and husband, commenced this action in the superior court for King county seeking a decree adjudicating a forfeiture of all rights of defendants, Mrs. Morrison and husband, under a contract whereby the plaintiffs agreed to sell, and the defendants agreed to purchase, a six-acre tract of land, including the abutting tide land, fronting on Magnolia Beach, in that county, for an agreed purchase price of ten thousand dollars, payable in installments extending over several years. The theory upon which the plaintiffs rest their claim for relief is that the defendants have forfeited all rights under the contract by their default in payment of the agreed purchase price installments in accordance with the terms of the contract.

The defendants, by answer and cross-complaint, prayed for a decree awarding them rescission of the contract and return of the amounts paid by them upon the agreed purchase price, and the amounts paid by them for taxes against the premises, and for insurance upon the dwelling house situated thereon; and, also, prayed for "such other and further relief as to the court may seem proper." The theory upon which the

defendants rest their claim for affirmative relief is that the plaintiffs have rendered it impossible for them to convey or vest in the defendants good title to the whole of the premises, particularly in that the plaintiffs have conveyed by deed to King county a considerable portion of the land for a highway.

The case was duly transferred to the superior court for Pierce county for trial; and being of equitable cognizance, proceeded to trial in that court sitting without a jury. The trial resulted in findings and decree denying to the plaintiffs their claimed present right of forfeiture of the contract rights of the defendants; also denying to the defendants their claimed right of rescission of the contract; but awarding to the defendants, in compliance with their prayer for general relief, two thousand dollars damages against the plaintiffs as a credit upon the unpaid portion of the purchase price, because of the conveyance by the plaintiffs to King county of a portion of the premises for a highway, which rendered it impossible for them to fully perform the contract. From this disposition of the case in the superior court, the plaintiffs have appealed to this court.

The controlling facts, we think, may be fairly summarized as follows: On September 15, 1921, the plaintiffs entered into a contract of sale of the premises to the defendants for an agreed purchase price of ten thousand dollars, the defendants paying fifteen hundred dollars at that time, and agreeing to pay five hundred dollars at the expiration of every six months' period thereafter. The contract contained forfeiture conditions, one of which was failure on the part of defendants to make payment of installments as agreed, such failure giving to the plaintiffs the right to declare the contract void "without any declaration of forfeiture," and without any right in the defendants to a

return of any portion of the purchase price which may have been paid by them. The contract contained general covenants of warranty of title; that is, that upon full payment of the purchase price, the plaintiffs would convey to the defendants good title accordingly.

On October 17, 1921, the plaintiffs conveyed to King county for a highway a strip of land, forty feet wide, clear across the water front of the premises, so as to separate the beach and water front from the main upland portion of the premises on which the dwelling house was situated.

On December 21, 1922, the parties executed a new contract, exactly of the same tenor and effect as the one of September 15, 1921, except that the six months' installment payments were reduced to two hundred fifty dollars. This new contract, manifestly, was intended to take the place of the former contract.

The evidence is in conflict as to when the defendants first learned of the making of the plaintiffs' conveyance to King county of the strip of land for a highway. However, we adopt, for present purposes, the findings of the trial court upon that question that the defendants were notified in the summer of 1924 of the making of that conveyance. It is, at all events, plain that, up to that time, there was not upon the ground any evidence of the existence of a public highway along the course of the then conveyed strip, or elsewhere across the premises, and that the defendants had no knowledge of any such conveyance being made to King county.

Thereafter the defendants continued to make numerous payments upon the purchase price installments, most of which were made and accepted by the plaintiffs after the due dates of the agreed installments and in amounts less than the agreed installments. Sometime in the fall of 1926, King county com-

menced construction of a road upon the granted strip, and it was nearly completed at the time of the commencement of this action. The road was so graded and constructed that the waterside edge of its grade was some three or four feet above the beach, being so held in position by piles and cribbing, while prior thereto the beach had a practically uniform, gentle slope from the upland to the water's edge.

On November 9, 1926, the plaintiffs made written demand upon the defendants as follows:

"Please be advised that we hereby make a demand on you for the sum of $792.80, together with interest on overdue payment, which amount represents payments past due on your contract."

No other notice or demand indicating an election on the part of the plaintiffs to forfeit the contract rights of defendants was given prior to the commencement of this action. On November 16, 1926, the defendants notified the plaintiffs of their claim of rescission of the contract, and made demand for a return of all sums paid by them upon the purchase price, for taxes and for insurance, aggregating some five thousand dollars, offering to surrender the premises and quitclaim all their interest therein. Thereafter, in December, 1926, the plaintiffs commenced this action. Thereafter, the defendants filed therein their answer and cross-complaint, and thereafter the trial proceeded to final decree, as above noticed.

[1] Were the plaintiffs entitled to a decree forfeiting the contract rights of the defendants because of their default in payment of past due installments at the time of the demand above quoted? It seems plain to us that that demand was not a notice of the plaintiffs' intention to exercise their right of forfeiture; and that, because of the indulgences evidenced by their repeated acceptance of prior payments upon past due in-

stallments, they could, in no event, successfully claim
a forfeiture of the contract rights of the defendants
until they had first clearly notified the defendants of
such a claim, and given to the defendants an oppor-
tunity of making full payments of past due install-
ments within a reasonable time. This alone is suf-
ficient, we think, to support the court's refusal to
award a decree of forfeiture in favor of the plaintiffs.
Our decision in *Wadham v. McVicar*, 115 Wash. 503,
197 Pac. 616, wherein our prior decisions are noticed,
clearly calls for this conclusion.

[2] The question of the defendants' being entitled
to be awarded rescission of the contract because of the
conveyance by the plaintiffs of the strip of land to
King county for a highway, is of no practical import-
ance here because the defendants have not appealed
and do not seek reversal of that ruling of the court
which was made, manifestly upon the theory that the
defendants had waived that remedy by making re-
peated payments upon the purchase price, after having
knowledge of the making of the conveyance of the
highway right of way to King county.

[3] Were the defendants entitled to damages, and
to be credited therefor upon the purchase price of the
contract, as awarded by the trial court? In awarding
such damages, the trial court manifestly proceeded
upon the theory of breach of warranty of title on the
part of the plaintiffs; that is, that the plaintiffs had,
by the conveyance to King county, placed themselves
in a position rendering it impossible for them to con-
vey the whole of the premises to the defendants in
compliance with the terms of the contract, and that
such breach of the contract had resulted in actual
ouster of the defendants from the possession and en-
joyment of the strip of land conveyed to King county,
to the possession and enjoyment of which they were

entitled under the contract pending the payment of the installments upon the purchase price.

Counsel for the plaintiffs invoke the general rule that a general covenant of warranty of title, contained in a contract for the sale of rural acreage real property, giving the vendee the right of possession and enjoyment of the premises, or contained in a deed of conveyance of such property, is not breached by an existing highway across the property; citing our decisions in *Hoyt v. Rothe,* 95 Wash. 369, 163 Pac. 925, and *Walquist v. Johnson,* 103 Wash. 30, 173 Pac. 735.

While, by those decisions, we have adopted this general rule, noting the conflict of authority touching the question, we think it is rendered plain in each of those cases that there was drawn in question a public highway, actually physically existing and plainly visible upon the ground across the rural property in question, at the time of the making of the general covenant of warranty of title by the vendor. The rule announced in those decisions, we think, was never contemplated as absolving the grantor from the consequence of a breach of his general covenant of warranty of title, by his creating a condition resulting in the public acquiring a right of way for a public highway over the property, after the making of his general covenant of warranty of title.

There being no evidence, upon the ground, of the existence of a public highway until long after the making of the second contract for the sale of the property from the plaintiffs to the defendants, and no actual knowledge on the part of the defendants until long after the making of that contract that there had been a grant of a public highway right of way across the premises to King county, it seems plain to us that we have here conditions altogether different from those considered in the *Hoyt* and *Walquist* decisions, above

cited. The theory of the rule here invoked in behalf of the plaintiffs is well evidenced by observations made by the court in *Whitbeck v. Cook,* 15 Johns. (N. Y.) 483, quoted with approval in our decision in the *Hoyt* case, as follows:

" 'It must strike the mind with surprise, that a person who purchases a farm, through which a public road runs at the time of purchase, and had so run long before, who must be presumed to have known of the existence of the road, and who chooses to have it included in his purchase, shall turn around on his grantor, and complain that the general covenants in the deed have been broken, by the existence of what he saw when he purchased, and what must have enhanced the value of the farm.' "

In the text of 7 R. C. L. 1154, we read:

"As to whether or not the existence of a public highway over the premises conveyed is a breach of a covenant of general warranty, the authorities are not in harmony, some of them holding that in all cases a public highway is an incumbrance, within the meaning of the usual covenants in a warranty deed, for the reason that its existence deprives the owner of that exclusive dominion over the land to which he is entitled. Other decisions, however, maintain the doctrine, which, it is believed, is supported by the better reasoning, that the fact that a part of land conveyed with covenant of warranty was, at the time of conveyance, a highway, and used as such, is not a breach of the covenant for the reason that the grantee must be presumed to have known of the existence of the public easement, and purchased upon a consideration in reference to the situation in that respect. Even where this doctrine prevails it has been held that the existence of a public easement, such as a right of way for a public street, when the grantee has no notice of the right to such easement, and there was no indication of a highway or street on the property at the time of his purchase, is a breach of a covenant of warranty. *Hymes v. Estey,* 116 N. Y. 501, 22 N. E. 1087, 15 Am. St. 421."

No decision has been brought to our attention making the general rule adopted by this court of any controlling effect where a highway was not physically in existence across the contracted for or granted land, and the grantee had no actual notice of the legal existence on paper of a right of way for such a highway. Clearly, we think, under the circumstances here shown, defendants did not contract to purchase this property, either by the first or second purchase contract made with the plaintiffs, with any thought, at either of those times, but that they were ultimately to acquire clear title to the whole of the land, free from all encumbrances without exception. Manifestly, they did not contemplate assuming the encumbrances of a public highway easement across the land, for they did not know, until long after the entering into of both purchase contracts, of there being any such highway or highway easement in existence. We conclude that the plaintiffs have breached their general covenant of warranty of title contained in their sale contract for the premises with the defendants, and that the defendants are entitled to damages therefor, though they might have been entitled, in the alternative, to rescind the contract had they not waived that remedy.

[4] Contention is made that the damages awarded to the defendants are excessive. This, of course, presents only a question of fact. After a review of the evidence, and noticing particularly the location of the upland upon which the dwelling house is situated with reference to the beach and water front, and the manner in which those portions of the premises are physically separated by the highway, particularly in the manner in which it is constructed, we cannot say that the finding of damages in favor of the defendants and against the plaintiffs in the sum of two thousand dollars is excessive.

[5] Some contention is made that the trial court, immediately upon the conclusion of the trial, in legal effect, finally decided the case in favor of the plaintiffs in such manner that the court could not thereafter legally make a different disposition of the case. It appears that, immediately following the argument of counsel upon the merits, the court made some observations that were understood by the clerk as deciding the case in favor of the plaintiffs, and accordingly made a brief journal entry, the whole of the material part of which reads: "The court being fully advised, finds for the plaintiffs." This, manifestly, was not a final decree in favor of the plaintiffs, even in form, and in view of what there happened, it is plain that all parties contemplated that formal findings, conclusions, and decree should thereafter be prepared and entered. Counsel for each party thereafter requested the making of formal findings and conclusions, such as they conceived their clients entitled to; and upon their presentation to the court, and further argument and colloquy between court and counsel, the court made findings and conclusions and rendered final decree in favor of the defendants as above noticed. It seems plain to us that the final disposition of the case was not finally consummated by the brief journal entry above mentioned, but that the final disposition of the case still lay within the breast of the court, and it was effectually finally made by the findings, conclusions, and decree which were thereafter formally made and entered on April 7, 1927.

[6] We do not understand counsel for the plaintiffs to here seriously question the method of crediting the two thousand dollar award of damages in favor of the defendants upon the contract price. The credit was, by the decree, made in such manner as to cause all past due installments to be paid in full, leaving a consid-

erable sum to be applied on later maturing install-ments, but not immediately later maturing install-ments. However, it seems clear to us that the court's discretion was fairly exercised in that respect.

We conclude that the decree must be affirmed. It is so ordered.

MACKINTOSH, C. J., MITCHELL, TOLMAN, and FRENCH, JJ., concur.