

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JOSEPH MOJARRAD and NICOLE CHING LIN LU, husband and wife,

Appellants,

v.

RON WALDEN and JANE DOE WALDEN, husband and wife; RON WALDEN, as personal representative for the ESTATE OF GILBERT WALDEN, a probate estate,

Defendants,

LORRAINE WALDEN and JOHN DOE WALDEN, husband and wife,

Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 74546-8-I
(consolidated with 74768-1)

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 19, 2016

BECKER, J. — This appeal concerns a claim for breach of the warranty of quiet possession of a gravel driveway that runs across a parcel of rural property. In 2005, the seller gave the buyer a statutory warranty deed to the parcel, including the driveway. The buyer claims that at closing, he was unaware that a neighbor had acquired title to the driveway by adverse possession decades earlier. In 2010, the buyer found he was unable to use the driveway because the neighbor had gated it. On summary judgment, the trial court held that the alleged breach of the warranty of quiet possession occurred at the time of conveyance in 2005, necessitating dismissal of the claim as beyond the statute of limitations.

We reverse. A jury could find that the breach did not occur until the buyer encountered the blocked driveway in 2010.

We review a summary judgment order de novo, considering the evidence in the light most favorable to the nonmoving party. Mastro v. Kumakichi Corp., 90 Wn. App. 157, 162, 951 P.2d 817, review denied, 136 Wn.2d 1015 (1998). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See CR 56(c).

## FACTS

From 1952 until his death in 2009, Gilbert Walden owned and lived on property in rural Skagit County just off Butler Creek Road. To get from the road to the residence and shop on his property, he used a driveway that extends some 30 to 50 feet past the residence.

Respondent Lorraine Walden is a widow in her late 60s. She was married to Gilbert's brother, Melroy. Lorraine and Melroy lived in Seattle and regularly drove up to Skagit County to visit Gilbert. Melroy was interested in buying property as an investment. Gilbert recommended the purchase of the property that adjoined his to the north, an undeveloped plot of land of 20 acres between Butler Creek on the west and Butler Creek Road on the east. Melroy and Lorraine bought this property in 1965. They received a warranty deed that was recorded in March 1967. The driveway is near the boundary line of the two properties.

2

According to Lorraine, she and Melroy did not go onto their property and they were not interested in developing it. They did not believe the driveway was included in their property; they always thought it belonged to Gilbert, who exclusively used it, as had his predecessors. They used the driveway only when they visited Gilbert.

Gilbert at one time raised cattle on his property and maintained a fence on the north side of the driveway. Sometime in the 1960s, he moved his cattle, and from then on, he had no reason to keep the fence repaired. At present, the barbed wire remnants of the fence can be found only by picking through brush.

Melroy died in 1990. Lorraine continued to live in Seattle, where she worked until her retirement in 2013. She drove up from time to time to visit Gilbert. She thought of her property as an asset that she could sell for cash when she needed money to live on.

Around 1992, Lorraine decided to acquire a narrow two-acre pie-shaped piece of land between the eastern boundary of her property and the Butler Creek Road. Lorraine understood that acquisition of this parcel was necessary to prevent her parcel from being landlocked. To facilitate the purchase, she commissioned a survey by AARAY Consultants. The survey is dated October 5, 1992.

The AARAY survey showed the driveway as being on Lorraine's property. Gilbert and Lorraine discussed this and "laughed" about what they considered to be a mistake. Gilbert believed the surveyor had started from the wrong post. The surveyor refused Lorraine's request to make a correction. Lorraine left it at

3

that. She had spent $5,000 on the survey. "I didn't want to spend money on something I knew that was useless. I knew where my line was." She knew all along Gilbert had owned the driveway since 1952 or 1953. Lorraine received title to the 2-acre parcel in April 2004. With that addition, the property she sold to Mojarrad now consists of 22 acres.

In 2005, Lorraine decided to offer the property for sale. At the same time, Mojarrad and his wife, who live in Texas, were looking for rural acreage in Washington as a possible place to move and build a house for retirement. The Mojarrads did not meet Lorraine personally. Their agent, Mike Trojan, showed them Lorraine's property. They walked along the driveway, "way down to the west side," to the west corner "that was a little like a fish creek," until they got to an area so crowded by trees it was impassable. In doing so, they walked by Gilbert's house. They did not see a fence or a ditch.

On September 30, 2005, the Mojarrads signed a purchase and sale agreement offering to purchase the property for $175,000. Lorraine signed her acceptance on October 1, 2005. On October 4, the Mojarrads obtained a seller disclosure statement and a copy of the 1992 AARAY survey. The seller disclosure statement, initialed by Lorraine on October 3, represented that there were no "rights of way, easements, or access limitations that may affect the Buyer's use of the property," no "encroachments, boundary agreements, or boundary disputes," and no "covenants, conditions, or restrictions which affect the property."

Closing occurred on October 19, 2005. The Mojarrads did not attend the closing. The real estate agent for Lorraine was there, and Mojarrad's agent was present also, at least by speaker phone. According to Lorraine, Gilbert accompanied her to the escrow "to make it absolutely crystal clear that whatever the survey showed was not a true reflection of ownership or possession." She said that Gilbert "made it very clear" to the realtors and others present at the escrow that it was always understood that he owned the driveway "to the north side of the ditch where the fence ran." According to Lorraine, Mojarrad's agent said, "Yes, they know that."

The record does not conclusively establish that the message delivered by Gilbert at closing was relayed to Mojarrad. The record does not contain testimony from either of the real estate agents. According to Mojarrad, "We relied upon Lorraine Walden's seller disclosure statement and survey and closed the purchase of the Property. Lorraine Walden did not notify us that any other person claimed to own or possess any interest in any portion of the Property." Lorraine admits she took no other steps to inform the Mojarrads that the driveway was not included in the sale.

In 2009, Gilbert died and his property passed to his estate. Gilbert's son Ron Walden took over as the personal representative of Gilbert's estate in 2010. Initially, he went to the residence on a daily basis to clean up the property. He said after cleanup was complete, he shut the gate but continued to drive by regularly.

In 2009, Mojarrad visited his property and walked down the driveway. He saw no gate. He did see some "junk" on the driveway—"cable, old battery, tire," and perhaps a travel trailer. Mojarrad claims he had a telephone conversation with Ron in which he requested that these items be moved, and he said Ron agreed to move them. Ron says he does not recall this conversation.

Mojarrad hired Matthew Mahaffie, a wetland ecologist, to do a wetland study. According to Mahaffie, he advised Mojarrad "that much of his property was considered a wetland upon which a house could be built only at an excruciating expense." He told Mojarrad that to build in the southwest corner would require using the driveway and then going across the Walden estate property. Mahaffie declared that Mojarrad "did not know where his property corners were" and "did not know that the driveway servicing the Walden estate property was within his boundary lines." Mahaffie advised Mojarrad that the only suitable building site fronted Butler Creek Road. He said Mojarrad did not want to build that close to the road.

Ron and Mojarrad both recall an encounter in 2010 when Mojarrad and his wife were visiting the property. According to Mojarrad, this was the first time he found the driveway gated. He flagged Ron down on Butler Creek Road. Ron opened the gate, and they walked down the driveway. Mojarrad demanded removal of the gate. He said he showed Ron the survey depicting the driveway as being on his property, and Ron said, "I don't care what the survey shows. I take this driveway anyhow."

Ron recalls that Mojarrad "told me that the driveway was his and I needed to move everything that was on his property immediately." Ron surmised that Mojarrad "assumed the property line was on the north side of the driveway when he made the purchase" but had since found out that it would be too expensive to build a new road into his property. "It was cheaper for him to take that driveway and because of the survey, he would take it." Ron said he threatened to call the sheriff because Mojarrad "got rather assertive" at this point.

Ron's son Jeffrey Walden was also present at this conversation in 2010. He recalls that Ron explained how the property line was determined by a government section marker on the east side of Butler Creek Road. According to Jeffrey, Mojarrad "admitted that he was aware that the driveway was not included as access when he purchased the property but said he was going to take it now because his property was nearly all wetland and he needed it to get access to the only building site on his property which was in the southwest corner of the property he had purchased."

Mojarrad visited the property in 2012 and again found the driveway blocked. He discovered that Ron had heavy equipment digging on the driveway.

In September 2012, Mojarrad received a letter from attorney John Hicks, who was representing Gilbert's estate. Hicks asserted that the estate owned the driveway. His letter offered that the Walden estate would "conduct a survey sufficient to set the line along the fence line and cause a Deed to be prepared for your signature to clear up any issues concerning the boundary." Attached to the letter was a declaration from Lorraine stating that she told Gilbert after the 1992

survey that no matter what the survey showed, the true property line was north of the ditch.

On October 25, 2012, and November 15, 2012, Mojarrad's attorney sent letters to Lorraine. Each had the heading, "Tender of Defense of Mojarrad/Butler Creek property." The letters demanded that Lorraine defend Mojarrad's title against the estate's claim of ownership of the driveway. Otherwise, "my clients will commence defense of their own title immediately and will pursue you for indemnification of their losses, costs, and reasonable attorney fees." Lorraine did not respond.

In March 2014, Mojarrad filed suit against Ron Walden, the estate of Gilbert Walden, and Lorraine Walden. Against Ron and the estate, Mojarrad sought to quiet title to the driveway. Against Lorraine, Mojarrad alleged breach of deed warranties, unjust enrichment, equitable estoppel, negligent misrepresentation, and equitable indemnity. The defendants filed an answer, alleging that Gilbert had acquired the driveway by adverse possession.

Attorney Garl Long, representing the Walden estate, wrote to Mojarrad in February 2015, asserting that the estate's claim of adverse possession of the driveway was incontestable, based on Lorraine's declaration, aerial photos, and the driveway serving only Gilbert's residence. The letter threatened a motion for summary judgment, and it mentioned that attorney fees are recoverable by the prevailing party in an adverse possession case under RCW 7.28.083. He proposed that Mojarrad should settle his quiet title action against the estate by cooperating in a boundary line adjustment. Gilbert's estate had commissioned

an "occupation survey" in 2014, known as the Lisser survey, with a legal description of the driveway portion of Mojarrad's property that would need to be conveyed to the Walden estate to accomplish a boundary line adjustment properly reflecting Gilbert's adverse possession.

Depositions of Mojarrad, Lorraine, Ron, and other witnesses were taken at the end of May 2015. On July 20, 2015, Mojarrad and the estate settled and entered into a CR 2A stipulation for a boundary line adjustment as in the Lisser survey and a decree quieting title to the driveway in the estate. Mojarrad had advised Lorraine, by letter dated June 26, 2015, of his intent to enter into this stipulation.

The estate and Ron were dismissed from the lawsuit. Only Mojarrad's claims against Lorraine remained. Mojarrad moved for summary judgment against Lorraine for breach of the warranty of quiet enjoyment. Lorraine moved for summary judgment dismissing all of Mojarrad's claims.

After a hearing on December 10, 2015, the court denied Mojarrad's motion for summary judgment and granted Lorraine's. Mojarrad appeals both of these decisions.

Lorraine moved for attorney fees as the prevailing party. On January 19, 2016, the court denied her request for attorney fees. Lorraine's brief requests reversal of this decision.

## WARRANTY OF QUIET ENJOYMENT

Lorraine's motion for summary judgment

The trial court ruled that Mojarrad's claim for breach of the warranty of quiet possession was barred by the six-year statute of limitations. See RCW 4.16.040(1); Erickson v. Chase, 156 Wn. App. 151, 157, 231 P.3d 1261 (2010), review denied, 170 Wn.2d 1018 (2011). The court reasoned that when Gilbert represented to Mojarrad's agent at closing in 2005 that the driveway was not part of the property being sold, Mojarrad was put on notice of the estate's claim of paramount title and the statute of limitations began to run.

The warranty of quiet enjoyment, also known as quiet possession, "warrants to the grantee, his or her heirs and assigns, the quiet and peaceable possession" of premises conveyed by a statutory warranty deed. RCW 64.04.030. This is a future warranty. Erickson, 156 Wn. App. at 158. As a general rule, the warranty of quiet possession is not breached until the buyer experiences an actual or constructive eviction by one who holds a paramount title existing at the time of the conveyance. Foley v. Smith, 14 Wn. App. 285, 291, 539 P.2d 874 (1975); W. Coast Mfg. & Inv. Co. v. W. Coast Improvement Co., 25 Wash. 627, 643, 66 P. 97 (1901).

Mojarrad argues for application of the general rule. He contends that his right to quiet possession of the driveway was not disturbed until 2010 at the earliest, when he first encountered the driveway blocked by a gate. Mojarrad views the gate as Gilbert's estate's first effort to assert its paramount title to the driveway and evict him. Because this incident occurred less than six years

10

before he filed suit in March 2014, Mojarrad contends the trial court erred in ruling that the statute of limitations had already run on his claim for breach of the warranty of quiet enjoyment.

The general rule has an exception that applies when the holder of the paramount title is in possession of the disputed property at the time the seller conveys the warranty deed to the buyer. Whatcom Timber Co. v. Wright, 102 Wash. 566, 568, 173 P. 724 (1918). "Appellant did not obtain possession, and, therefore, the general rule, that the warranty is not broken until eviction or some substantial interference with the possession, is not applicable in this case. . . . If, at the time the deed is executed the premises are in the possession of third persons claiming under a superior title and grantee cannot be put into possession, the covenant of warranty is broken when made, without any further acts of the parties." Whatcom Timber, 102 Wash. at 568.

Relying on the exception stated in Whatcom Timber, Lorraine contends that the record establishes beyond dispute both that Gilbert had a paramount title to the driveway and also that he was in possession of the driveway when the deed was executed in 2005, and therefore the statute of limitations began to run at that time.

It is by now undisputed that Gilbert had a paramount title to the driveway. The parties agree that at the time Lorraine conveyed the 22-acre parcel to Mojarrad, Gilbert had already acquired a paramount title to the driveway by adverse possession decades before. The fact that Gilbert had not obtained a record title is not important. "Title does not necessarily depend upon record

11

proof. Adverse possession is sufficient to support title, and when sustained by proofs collateral to, or in defiance of, the record title, is potent to overcome a record title. Possession, adverse and hostile for the statutory period, and not the record, supports the fee." Hoyt v. Rothe, 95 Wash. 369, 374, 163 P. 925 (1917); see also Gorman v. City of Woodinville, 175 Wn.2d 68, 74, 283 P.2d 1082 (2012).

To establish the exception to the general rule under Whatcom Timber, Lorraine also had to prove that at the time the deed was executed, the driveway was "in the possession" of Gilbert, the holder of superior title, and that the grantee, Mojarrad, could not be "put into possession." Whatcom Timber, 102 Wash. at 568.

If Mojarrad's claim of breach of the warranty of quiet possession goes to trial, the trier of fact will have to decide whether the driveway was "in the possession" of Gilbert in 2005, such that Mojarrad could not "be put into possession." Yet Lorraine's brief does not address what is meant by "possession" in this context.

Whatcom Timber does not answer the question because, there, it was undisputed that the third parties with paramount title were in possession of the disputed tracts of forested land. The complaint of the plaintiff timber company alleged as much. Whatcom Timber, 102 Wash. at 567, 568. The court was not asked to decide what evidence is sufficient to prove possession when the holder of the paramount title does not have a paper title. The opinion is silent on this topic.

12

Lorraine relies primarily on the undisputed fact of Gilbert's adverse possession against Lorraine in the years leading up to 2005, as well as his use of the driveway after Mojarrad received the deed. Without more, these facts are not sufficient to support applying the exception to the general rule because they do not establish that Gilbert's "possession" of the driveway was manifested in such a way that Mojarrad could not be "put into possession" of it after he received the deed.

The trial court concluded the exception to the general rule in Whatcom Timber was decisively established by the conversation between Gilbert and the real estate agent at the time of closing when, according to Lorraine's testimony, Gilbert clearly stated that "he owned the driveway." The law does not support that conclusion. Even if the agent relayed Gilbert's statement to Mojarrad, the statement was limited to a claim of paramount title. Gilbert's statement did not establish that Gilbert was in "possession" or that Mojarrad could not be "put into possession."

The trial court also believed that the statute of limitations began to run at closing because Mojarrad was put on inquiry notice by Gilbert's stated claim of ownership. "I will find that because of the representation to the agent at the time of sale that the driveway was not part of the driveway being sold. That that in fact put Mr. Mojarrad on notice." The law does not support that conclusion either. A grantee "does not waive the covenants of a deed by having knowledge of a defect." Edmonson v. Popchoi, 172 Wn.2d 272, 283, 256 P.3d 1223 (2011). Knowledge by the grantee at the time of the conveyance of a defect in the

13

grantor's title does not control the force and effect of the express covenants in the deed or affect the question of breach. West Coast Mfg., 25 Wash. at 637-38. Purchasers "'often take warranties knowing of defects in the title.'" West Coast Mfg., 25 Wash. at 637-38, quoting 8 AM. & ENG. ENC. LAW 86-88 (2d ed. 1898).

We return to the question left unanswered by Whatcom Timber: What evidence, other than a paper title, is sufficient to prove the holder of paramount title is in "possession" of the property conveyed to the grantee such that the grantee cannot be "put into possession"? *Washington Practice* contains an informative discussion that is cited by both parties:

> This covenant [of quiet enjoyment] represents that the grantee's possession will not be disturbed by any third person who has a superior right to possession founded upon a right that existed at the time of conveyance. Therefore, while the third person will be someone who claims under a paramount right that existed at the time of conveyance, the covenant is not breached until that person actually disturbs the grantee in possession. In Washington a disturbance of possession may occur, not only by a third person's physical entry, but also by constructive eviction by that person's proving his superior right and prevailing in an action for possession. Also, though the covenant is considered a "future" covenant, it may be breached at the moment of conveyance if a third person, such as the holder of an easement or an adverse possessor who has already perfected title, is then in possession.

18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 14.3 (2d ed. 2004) (footnote omitted). The passage quoted above indicates that if the third party holds a paramount title but has not obtained record title before the seller conveys the deed to the grantee, breach of the covenant does not occur until there is some kind of "physical entry" or "disturbance" by the third party.

When Lorraine conveyed the property to Mojarrad in 2005, the AARAY survey showed the driveway as being on Lorraine's property. Gilbert had not yet perfected his title to the driveway or prevailed in any action against Lorraine for possession of it. And other than Gilbert's continued use of the driveway, the record furnishes no evidence of a physical act by Gilbert disturbing Mojarrad's possession or otherwise manifesting Gilbert's possession of the driveway in a way that amounted to eviction of Mojarrad. Mojarrad declares that when he visited his property in 2005 and 2009, he encountered no impediment to his use of the driveway. The old fence on the north side of the driveway was obscured by brush, and Mojarrad said he did not see a gate across the driveway until 2010. The record does not establish beyond dispute that Gilbert or his successors denied Mojarrad the ability to take exclusive possession of the driveway before 2010. So far as the record reveals, Mojarrad could have fenced the driveway so as to exclude all others, if he had been inclined to do so.

Under these circumstances, we conclude that summary judgment for Lorraine was improperly granted.

Mojarrad's motion for summary judgment

Mojarrad's motion for summary judgment asked the court to declare as a matter of law that Lorraine breached the warranty of quiet enjoyment and that rescission was the appropriate remedy. As discussed above, he contends the trial court erred by relying on the statute of limitations to deny his motion.

A threshold issue is appealability, though neither party addresses it. Generally, a denial of a summary judgment order is not appealable. See, e.g.,

Zimny v. Lovric, 59 Wn. App. 737, 739, 801 P.2d 259. This court may, however, choose to grant review of a summary judgment denial if the issue will remain in the case on remand. See, e.g., Ruff v. King County, 72 Wn. App. 289, 300-01, 865 P.2d 5 (1993) (in a personal injury case, reversing grant of summary judgment to defendant on issue of causation; also reviewing and affirming denial of the plaintiff's motion for summary judgment declaring him to be free of contributory negligence). That is the case here. Because Mojarrad's claim will remain in the case, we exercise our discretion to review the denial of his motion for summary judgment.

We cannot conclude that the existing record compels a ruling for Mojarrad as a matter of law on his claim of breach of quiet enjoyment. Neither Lorraine nor Mojarrad has articulated a test or instruction a fact finder could use to decide whether Gilbert was in "possession" of the driveway when Mojarrad received the deed in 2005 such that Mojarrad could not be "put in possession." Lorraine claims it is uncontested that Gilbert was in "possession" of the driveway in 2005 because he was an adverse possessor. Mojarrad responds by reciting some of the elements of adverse possession—it must be exclusive, actual and uninterrupted, and open and notorious. Chaplin v. Sanders, 100 Wn.2d 853, 857, 676 P.2d 431 (1984). Mojarrad contends that while these elements may have been present earlier, in 2005 Gilbert's possession was no longer exclusive, actual, and open because there was no gate and no visible fence.

The briefing at this point is inadequate to support a holding that "possession" in this context is legally defined either by the elements of adverse

16

possession, or—as argued in Mojarrad's reply brief below—that "possession" means conduct that evicts or excludes the grantee from the property at the time of conveyance. The trial court has not yet definitively ruled on this issue. We conclude the issue would benefit from further legal and factual development as the case moves toward trial. We affirm the trial court's denial of Mojarrad's motion for summary judgment.

## WARRANTY TO DEFEND TITLE

Mojarrad's complaint also alleged that Lorraine breached the warranty to defend title. He contends that the court erred in dismissing this claim on summary judgment.

A warranty deed in Washington carries the statutory covenant that the grantor "will defend the title thereto against all persons who may lawfully claim the same." RCW 64.04.030. Damages for a grantor's breach are the fees and costs that the grantee incurred in defending title. Mastro, 90 Wn. App. at 163.

The warranty to defend title is a future warranty. Erickson, 156 Wn. App. at 158. A future warranty can be breached after conveyance. Erickson, 156 Wn. App. at 158. Lorraine's brief below concedes that the claim was brought within the statute of limitations.

Lorraine argues that Mojarrad did not make an effective tender of defense, a prerequisite for recovery under the warranty to defend title. Mastro, 90 Wn. App. at 164.

In 2012, Mojarrad sent Lorraine two letters demanding she defend his title against the estate's claim of ownership. Lorraine contends these letters did not

qualify as an effective tender because they purported to tender defense of claims which had yet to be brought against him. She contends a tender is effective only if made after a suit against the grantee is already pending. See Dixon v. Flat-Roosevelt Motors, Inc., 8 Wn. App. 689, 692, 509 P.2d 86 (1973).

Mastro and Erickson cite Dixon as setting forth the factors to evaluate whether proper tender has been made. Mastro, 90 Wn. App. at 164-65; Erickson, 156 Wn. App. at 158. In Dixon, the court identified four elements of a tender of defense by borrowing from the common law:

> The tender of defense spoken of is equivalent to "vouching in", a common-law device by which a defendant notifies another (1) *of the pendency of the suit against him*, (2) that if liability is found, the defendant will look to the vouchee for indemnity, (3) that the notice constitutes a formal tender of the right to defend the action, and (4) that if the vouchee refuses to defend, it will be bound in a subsequent litigation between them to the factual determination necessary to the original judgment.

Dixon, 8 Wn. App. at 692 (emphasis added).

Dixon does not make the pendency of a lawsuit an absolute prerequisite for an effective tender, and Lorraine does not cite any cases that apply the first Dixon factor in that way. In Mastro and Erickson, third parties asserting a paramount claim to the land had brought suit to quiet title before the grantees tendered defense. Mastro, 90 Wn. App. at 161; Erickson, 156 Wn. App. at 157. Thus, these cases did not decide that notice of controversy short of a lawsuit will not suffice. Mastro states that a third party's claim of superior title is "usually" established in a lawsuit "between" the grantee and the third party. Mastro, 90 Wn. App. at 164.

At the time Mojarrad sent the letters to Lorraine demanding that she defend his title, Lorraine knew the estate claimed ownership of the driveway she had conveyed to Mojarrad. She had signed a declaration in 2012 supporting the estate's claim to the driveway. Although the estate had not filed a quiet title lawsuit, the potential for a lawsuit was clear. Mojarrad did not file suit until 2014, so Lorraine had two years to step in and defend Mojarrad's title. The statute says the grantor must "defend the title"—it does not say "defend the lawsuit." There was no requirement, under these circumstances, that a lawsuit actually be pending before Mojarrad was entitled to assert his statutory right to have Lorraine defend his title.

Lorraine also argues that under CR 11, she did not have a duty to defend Mojarrad's title from the estate's claim because she could not have advanced a defense in good faith. Lorraine's argument is unpersuasive. A grantor's duty to defend title is not eliminated when the third party asserts a claim the grantor knows or believes to be valid. Because Lorraine did not respond to Mojarrad's tender of defense, Mojarrad was alone in facing the estate's claim of superior title, and he incurred fees and costs to resolve the situation. We conclude that summary judgment for Lorraine was improperly granted.

### NEGLIGENT MISREPRESENTATION, EQUITABLE INDEMNITY, AND UNJUST ENRICHMENT

The trial granted summary judgment dismissal of Mojarrad's claims for negligent misrepresentation, equitable indemnity, and unjust enrichment, on the ground that all three claims were untimely. These claims are subject to three-year statutes of limitations. RCW 4.16.080; Sabey v. Howard Johnson & Co.,

101 Wn. App. 575, 593, 5 P.3d 730 (2000) (claim of negligent misrepresentation is subject to three-year statute of limitations); Geranios v. Annex Invs., Inc., 45 Wn.2d 233, 273 P.2d 793 (1954) (unjust enrichment claim subject to three-year statute of limitations under RCW 4.16.080(3)); Universal Underwriters Ins. Co. v. Sec. Indus., Inc., 391 F. Supp. 326, 328 (W.D. Wash. 1974) (under RCW 4.16.080(3), statute of limitations for an indemnity claim is three years).

Mojarrad assigns error to the dismissal of these three claims. He argues that the statute of limitations on these claims began to run in 2012 when he received the estate's letter claiming ownership of the driveway. He claims that when he read Lorraine's declaration that was attached to the letter, he discovered for the first time that Lorraine always knew the driveway was not hers to convey.

A statute of limitations does not begin to run until the cause of action accrues—that is, when the plaintiff has a right to seek relief in courts. Sabey, 101 Wn. App. at 592-93. Under the discovery rule, the statute of limitations does not begin to run until a plaintiff discovers or reasonably could have discovered all the essential elements of the cause of action. See Allyn v. Boe, 87 Wn. App. 722, 943 P.2d 364 (1997), review denied, 134 Wn.2d 1020 (1998).

Negligent misrepresentation

The essential elements of the tort of negligent misrepresentation in Washington are (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his or her

20

business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages. Ross v. Kirner, 162 Wn.2d 493, 499, 172 P.3d 701 (2007).

For a negligent misrepresentation claim to accrue, the plaintiff must have discovered (or, in the exercise of due diligence, should have discovered) the misrepresentation. Sabey, 101 Wn. App. at 593. Even taking the facts in the light most favorable to Mojarrad, he discovered, or in the exercise of due diligence should have discovered, Lorraine's misrepresentation at least in 2010, when he first found the driveway blocked by a gate and Ron told him that the estate owned the driveway. Mojarrad did not bring his negligent misrepresentation claim until March 2014, so this claim is barred by the three-year statute of limitations. The trial court did not err in dismissing it.

Equitable indemnity

The elements of equitable indemnity are (1) a wrongful act or omission by A toward B, (2) such act or omission exposes or involves B in litigation with C, and (3) C was not connected with the initial transaction or event. Tradewell Group, Inc. v. Mavis, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993). An indemnity action accrues when the party seeking indemnity pays or is legally adjudged obligated to pay damages to the third party. Sabey, 101 Wn. App. at 593; Cent. Wash. Refrigeration, Inc. v. Barbee, 133 Wn.2d 509, 517, 946 P.2d 760 (1997).

21

Mojarrad filed the complaint alleging an equitable indemnity claim against Lorraine in March 2014. The stipulated judgment and decree quieting title in the driveway to the estate was entered the next year on August 7, 2015. Mojarrad seeks damages and costs, including reasonable attorney fees. He contends the equitable indemnity claim is not untimely because the estate did not even threaten litigation until 2012.

Lorraine relies on a general argument that the statute of limitations on all of Mojarrad's claims began running on the closing date in 2005 when Lorraine and Gilbert advised his agent that the driveway was not included in the sale. Even assuming Mojarrad was aware of this communication, it is not clear that he knew or should have known in 2005 that Lorraine's misrepresentation had exposed him to litigation with the estate.

Because Lorraine does not adequately explain why the equitable indemnity claim is untimely, we reverse the order of dismissal and reinstate the claim. Whether there is sufficient proof of the elements of the claim is not at issue in this appeal; we hold only that there is a genuine issue of material fact as to timeliness.

Unjust enrichment

A claim of unjust enrichment requires proof of three elements: (1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment. Young v. Young, 164 Wn.2d 477, 484-85, 191 P.3d 1258 (2008).

Lorraine contends Mojarrad knew the elements of this claim at closing in 2005 as a result of the statements made to Mojarrad's realtor about Gilbert's ownership of the driveway. Mojarrad disputes that he ever received this information from the realtor. Mojarrad contends his cause of action for unjust enrichment did not accrue until 2012, when he discovered by reading Lorraine's declaration that she always knew the driveway was not hers, making it unjust for her to retain the benefit of the sale price.

Taking the evidence in the light most favorable to Mojarrad, the statute of limitations began to run in 2012 and his 2014 complaint was timely. The trial court erred in dismissing Mojarrad's unjust enrichment claim as barred by the statute of limitations.

## ATTORNEY FEES

Lorraine requested an award of attorney fees from the trial court. Her request was based on a clause in the purchase and sale agreement stating that if either party initiates suit against the other concerning the purchase and sale agreement, the prevailing party is entitled to reasonable attorney fees and expenses. The trial court denied this request. Lorraine contends the trial court should have awarded fees to her as the prevailing party.

Setting aside the question of whether this issue is properly before us in the absence of a notice of cross appeal, RAP 5.1(d), we hold that the clause in the purchase and sale agreement does not provide a basis for an award of attorney fees to either party. When Lorraine conveyed the land to Mojarrad via statutory warranty deed, the purchase and sale agreement merged into the statutory

warranty deed.  See Barber v. Peringer, 75 Wn. App. 248, 253, 877 P.2d 223

(1994).  At that point, there were no contractual rights for either party to enforce.

Under Barber, the attorney fees provision was restricted to enforcing rights under

the purchase and sale agreement.  The parties' right to attorney fees for

prevailing in an action under the purchase and sale agreement "ended when the

deed was executed and accepted."  Barber, 75 Wn. App. at 254.

We reverse the dismissal of Mojarrad's claims for breach of the warranty

of quiet enjoyment, breach of the duty to defend, unjust enrichment and equitable

indemnity.  We remand for reinstatement of those claims.  We affirm the order

denying Mojarrad's motion for summary judgment.  The dismissal of Mojarrad's

claim of negligent misrepresentation is also affirmed.

Becker, J.

WE CONCUR:

Leach, J.

Cox, J.

24